THE EUFAULA HOME INSURANCE COMPANY, plaintiffs in error, *vs.* PLANT & CUBBEDGE, defendants in error.

A new trial may be granted after trial before the petit jury, and before appeal.

When one is tendered, as security on the appeal bond, who is not a proper security under the law, the clerk, who takes the bond, should refuse to accept him. And if the omission of the clerk to reject such security, misleads the appellant, and prevents him from giving proper security, when, in good faith, he intends appealing, and the appellant makes these things appear to the Court, even after the adjournment of the Court, a new trial will be granted.

Motion for new trial. Decided by Judge COLE. Bibb Superior Court. March Term, 1868.

Plant & Cubbedge sued The Eufaula Home Insurance Company, by attachment and garnishment. The garnishment was dissolved by giving one Barker as security. The plaintiff got a verdict. From this the Insurance Company entered an appeal, giving said Barker as the sole security on the appeal bond. At the June Term, 1867, said appeal was dismissed, upon motion of plaintiff's attorneys, because said Barker, who was security on the bond, to dissolve the garnishment, was the only security on the appeal bond. That dismissal was affirmed by the Supreme Court at its December Term, 1867.

At the first session of Bibb Superior Court, after said affirmance, said Insurance Company filed a motion for a new trial, on the grounds that the verdict was contrary to the evidence, the law, the charge of the Court, and the justice and equity of the case. With this motion was filed an agreed brief of the evidence adduced on said petit jury trial, the substance of which was as follows:

Said Insurance Company insured, for Plant & Cubbedge, thirteen bales of cotton, at $2,000 00, from Macon to Buzzard Roost, on the Macon and Brunswick Railroad, thence to Darien, by the box of L. F. Choice, thence, per steamer or sail vessel, to Savannah. "Risk to allow forty days for the

trip unless sooner made." The policy was dated 24th of July, 1865. When the cotton reached Buzzard Roost, the box had not been made. It was first put on board a box belonging to Hodgkiss & Dunnally, which box sunk in the river at that place. These causes, and the low stage of the river, kept said cotton there about two weeks, before it was put on board the box of L. F. Choice. On the 4th of September, 1865, the box, with said cotton, and other bales, in all two hundred, started from Buzzard Roost to Darien, and had proceeded safely, till, on the 16th of September, in Dick's Swift Cut; there and then, the box ran under a stooping tree. About half the cargo went overboard, and the box sunk, with the balance. No sufficient aid could be had, till the cotton had staid in the water some two weeks or more, and, by that time, all marks, by which any of it could be identified, had been obliterated, and all of it was much damaged. The pilot was said to be competent and faithful, and no fault was attributed to any of the persons in charge of the box. The president wrote a letter, declining to pay for the cotton, on the ground that the forty days had transpired before the loss.

The new trial was refused, upon the ground that the motion came too late, and this is assigned as error.

W. Poe, for plaintiff in error, contended that this was within the exception, "except in extraordinary cases," and cited Irwin's Code, sec. 3667, Grady vs. Hightower, 1st Kelley's R., 252, and Chandler vs. Hammond, 23 Geo. R., 493.

Lanier & Anderson, for defendants in error, denied that this case was within the exception, reviewed said authorities, and read Bateman vs. Miller, 1st Sch. and Lefr, 201; further they said that a new trial could not be granted from the verdict of a petit jury, citing the Code, sec. 3662, and said case in 23 Georgia, 498. They contended that the detention on the river, could not be considered as part of the forty days, citing 3 Kent, 256; that said letter dispensed with.

44

proof of the loss, citing said Code, sec. 2771, and that the plaintiff could recover as for a total loss, citing 7 E. C. L. R., 364, and 9 do., 224.

HARRIS, J.

By sec. 3661, of the Code, the power to correct errors and grant new trials, in any cause depending in them, is given to the Superior Court, in such manner and under such rules and regulations as they may establish, according so law and the usages and customs of Courts. The Legislature evidently contemplated that the Judges of the Superior Courts, in convention, should prescribe a body of rules of practice, so as to cause uniformity in the Courts.

It so happened that no rule, whatever, as to whether a motion for new trial, may be made after a verdict at common law, or whether it could be made only after verdict on appeal trial, was prescribed. There being no law, no decision of this Court, no rule of practice prescribed by the convention of Judges of the Superior Court, regulating this matter, it would seem that, in a question thus arising, a discretion does belong to the Court, to dispose of it in conformity to general principles.

It seems that the plaintiff in error moved for a new trial on several grounds. We are not at liberty, adhering to the practice of this Court, to consider any of them, as they were not pronounced upon by the Judge, before whom the motion was made.

The sole question *here*, is whether or not a Judge of the Superior Court may not grant a new trial after a verdict *at common law?*

We have not been able, in the research made, to find anything which denies such power. Whilst it may be conceded that, under our recent system, allowing of appeals, as a general rule, new trials should not be granted after a verdict at common law, we are persuaded that cases of peculiar character, involving hardship, and productive of great injustice, could arise, which would authorize a change of practice. There can be no question, it is apprehended that the power

to grant new trials, should be exercised upon applications, setting forth, fully, such considerations as would be addressed to a Court of equity, and supported by affidavit. A party should never be forced to file a bill, under our system, to obtain a new trial. I take it that whenever a Court of equity has power to grant a new trial, such new trial can be granted on the common law side of the Superior Court, upon precisely the same principles.

We are aware that it is provided by the Code that applications for new trials, shall be made at the term at which a cause has been tried. This is, unquestionably, the general rule, and a sound one; but we do not understand it to exclude, when the term shall have passed, an application founded upon the discovery of new and important testimony, without any *laches* whatever, in applicant, in not having procured it for the trial, or other cases that may fall within the class called extraordinary, and are, therefore, exceptional.

The case between the same parties, decided at December Term, 1867, exhibited the fact that the plaintiff in error had in good faith attempted to appeal from the verdict at common law, but the appeal so entered was dismissed on motion of defendant, because the security on the appeal happened to be the same person who was security on the bond to dissolve the garnishment, and judgment had been entered up against him as such security. This Court sustained, on technical grounds, the decision dismissing the appeal; but whilst it did so, we must not shut our eyes to the fact that when the appeal was made the Clerk of the Court, cognizant, as he necessarily must have been, that Barker was the security on the bond given in the garnishment proceeding, and that when plaintiffs below obtained their verdict, they had entered up judgment against plaintiff in error, as also against Barker, he ought to have refused to receive Barker as security on the appeal. The competency and sufficiency of security offered are incidental questions for his decision when the appeal is applied for, and had he refused Barker, the plaintiff in error would most probably have procured other and competent security, and his appeal would have been heard. The omis-

sion of the Clerk to reject Barker as security, as he should have done, misled plaintiff in error, prevented his giving *additional* security, as the law required, or moving before the term had closed for a new trial. These circumstances, accidental in themselves, and where it is so palpable that the plaintiff in error did in good faith seek an appeal, authorized the Judge below to hear the application for new trial, and if, upon any of the grounds contained in the motion, the applicant was entitled to a rehearing, it should have been granted.

Judgment reversed.